[889 NYS2d 839]

JOSEPH KAHAN, Also Known as YOSEF KAHAN, Petitioner, v SARAH ROSNER, Also Known as SARA ROSNER, et al., Respondents.

Supreme Court, Kings County, November 16, 2009

**APPEARANCES OF COUNSEL**

*Herrick, Feinstein LLP*, New York City (*Scott E. Mollen* of counsel), for petitioner. *Derfner & Gillett, LLP*, New York City, for respondents.

**OPINION OF THE COURT**

MARTIN SCHNEIER, J.

The primary issue presented in this proceeding is should the rabbinical court's arbitration award made pursuant to the rabbinical court's requirement that the attorney chosen by any of the parties "would have to be approved by the Rabbinical Court," which did not approve the attorney chosen by the petitioner, be confirmed if the petitioner thereafter participated in the arbitration proceedings without objection. This is apparently an issue of first impression in this state.

Petitioner moves, pursuant to CPLR 7511, to vacate an arbitration award dated November 6, 2008. Respondents cross-petition, pursuant to CPLR 7510, for judgment confirming the arbitration award.

## Background

This is a family dispute between the petitioner brother, Joseph Kahan, and his respondent sisters, Sarah Rosner and Judith Stuhl, regarding his claim to two properties that were previously owned by his late father, Solomon Kahan, to wit: 226 Hooper Street, Brooklyn, New York and 158 Rutledge Street, Brooklyn, New York.

When Solomon Kahan died on March 4, 2005 he did not own either of these properties. They had been conveyed years earlier, pursuant to the following recorded deeds: On February 3, 1989 "Solomon Kahan and Bella Kahan, his wife" conveyed 226 Hooper Street to "Ervin Rosner and Sarah Rosner, his wife, as tenants by the entirety"; On June 21, 1988, "Bella Kahan" conveyed 158 Rutledge Street to "Jeno Stuhl and Judith Stuhl as to 50% interest and Bella Kahan as to 50% interest as Joint Tenants."

On July 4, 2007 the parties entered into a written arbitration agreement to have their dispute arbitrated by a rabbinical court or Beth Din. The arbitration agreement provided in pertinent part that "[w]e also accepted upon ourselves to bring along only such Rabbinical counsel who is acceptable to the Rabbinical Court and if we appear at the Rabbinical Court without Rabbinical Counsel we do so by our own desire." The petition alleges that

> "[d]uring the first session, Petitioner requested that
> he be represented in the rabbinical court arbitration
> by a 'toayn' (counsel/advocate). The Ad Hoc Rab-

binical Tribunal informed Petitioner that if he wanted to have such an advocate present, that he could only have the one that they designate for him. Thereafter, Petitioner requested the right to be represented in the arbitration by an attorney. The Ad Hoc Rabbinical Tribunal did not allow that either. Petitioner did not wish to use the individual designated for him by the Ad Hoc Rabbinical Tribunal, and was thus forced to proceed without the assistance of counsel."

Petitioner in his affirmation avers in pertinent part that

"I wanted Mr. Eisenberger to represent me because he is an experienced attorney who is also a toayn, he has appeared before various well-known rabbinical courts over the past twenty years, and I had no experience in such legal matters . . . He has experience cross-examining witnesses in rabbinical court arbitrations and I wanted him to review Respondents' documents, hear Respondents' witnesses and be able to cross-examine them. But the Ad Hoc Rabbinical Tribunal refused to permit him to do so. They wanted to select an attorney who would represent me, and I refused to agree to that."

Sheldon Eisenberger, Esq. in his affirmation avers in pertinent part that

"I am a member of the bar of this Court . . .

"aside from being an experience attorney, I am also an experienced 'Toayn' or Rabbinical Court advocate . . .

"Because of my experience as a 'Toayn' and as an attorney, on or about July 2, 2007, I was retained by Petitioner for the purposes of representing him in a Beth Din arbitration before Rabbi Aaron Labin and two other Rabbis concerning a dispute Petitioner had with his two sisters Mrs Stuhl and Mrs Rosner and others regarding property that was owned by their father Solomon Kahan . . .

"Shortly after our July 2, 2007 meeting Petitioner called my office and advised me that Rabbi Labin's Beth Din had refused to permit Petitioner to be represented in the Beth Din proceedings by either myself, an attorney in my office, or any other attorney of his choice. Mr Kahan told me that Rabbi Labin's Beth Din would only allow him to use an attorney selected for him by that Beth Din."

Shulem Menczer, the rabbinical court's case administrator, in his affidavit avers that petitioner "did not object to the Rabbinical Court's requirement that the attorneys or toayns would have to be approved by the Rabbinical Court, and he participated in the hearings without raising any objection with respect to this requirement."

On November 6, 2008 the rabbinical court issued its ruling which petitioner seeks to vacate on the grounds that the rabbinical court denied him the right to the attorney of his choice. Respondents oppose the petition and cross-petition to confirm the award on the grounds that petitioner participated in the arbitration proceedings without counsel and without any objection.

Respondents also argue that on February 5, 2009, in accordance with the award, a $14,295.01 bank check was mailed to petitioner and that "having received the benefit of the Award he should not be permitted to challenge it." Petitioner in his affirmation avers "[b]ut I never received this or any similar check." Respondents do not submit to the court a copy of the cancelled bank check.

## Discussion

CPLR article 75, "Arbitration," governs the procedure for judicial enforcement of arbitration agreements and regulates several aspects of the arbitration hearing itself.

CPLR 7501, with respect to the "Effect of Arbitration agreement," in pertinent part states: "A written agreement to submit any . . . existing controversy to arbitration is enforceable . . . and confers jurisdiction on the courts of the state to enforce it and to enter judgment on an award."

CPLR 7511 provides:

"(b) Grounds for vacating.

"1. The award shall be vacated on the application of a party who either participated in the arbitration or was served with a notice of intention to arbitrate if the court finds that the rights of that party were prejudiced by . . .

"(iv) failure to follow the procedure of this article, unless the party applying to vacate the award continued with the arbitration with notice of the defect and without objection."

The arbitration procedural requirements are contained in CPLR 7506, which states:

"(d) Representation by attorney. A party has the right to be represented by an attorney and may claim such right at any time as to any part of the arbitration or hearings which have not taken place. This right may not be waived . . .

"(f) Waiver. Except as provided in subdivision (d), a requirement of this section may be waived by written consent of the parties and it is waived if the parties continue with the arbitration without objection."

There is no requirement that a party in an arbitration proceeding be represented by an attorney. The nonwaivable nature of the right to an attorney is, however, broadly construed. Thus, a written waiver of representation renders an arbitration invalid even where the party does not thereafter request the services of an attorney (*Volpe v Cortes*, 16 AD3d 675 [2d Dept 2005]; *Sartiano v Becker*, 119 AD2d 656 [1986]).

In the instant case, petitioner was not denied his right to counsel. However, it is undisputed that he was denied the attorney of his choice. With respect to a party's right to the attorney of his choice in a civil action, the Court of Appeals has ruled that

"although an individual possesses no absolute right to representation by an attorney of his choice, any restriction imposed on that right will be carefully scrutinized. An individual's right to select an attorney who he believes is most capable of providing competent representation implicates both the First Amendment guarantees of freedom of association and the Sixth Amendment right to counsel and will not yield unless confronted with some overriding competing public interest" (*Matter of Abrams [John Anonymous]*, 62 NY2d 183, 196 [1984] [citations omitted]).

A party's entitlement to be represented in an ongoing litigation proceeding by counsel of his own choosing is a valued constitutional right which should not be abridged absent a clear showing that disqualification is warranted (*Bentz v Bentz*, 37 AD3d 386 [2d Dept 2007]). In the instant case, the rabbinical court gave no reason for denying petitioner's choice of Sheldon Eisenberger, Esq. to represent him in the arbitration proceedings and thereby violated the petitioner's right to his choice of counsel. Moreover, the choice of counsel is necessary to give effect to the nonwaivable right contained in CPLR 7506.

The critical issue is whether the arbitration proceedings leading up to the award complied with New York law. This rabbinical court's arbitration proceedings did not comply with CPLR 7506 (d) and must, therefore, be vacated pursuant to CPLR 7511.

## Conclusion

Based on the foregoing, the petition to vacate the arbitration award is granted and the award is vacated. The cross petition to confirm the arbitration award is denied.